UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED AUTO WORKERS, Local 578,

    Plaintiff,

vs.

OSHKOSH CORPORATION,

    Defendant.

Case No.:

**COMPLAINT**

PLAINTIFF United Auto Workers, Local 578, ("UAW" or "the Union"), by its attorney, for its Complaint and Petition for judicial confirmation and enforcement of an arbitration decision and award, states as follows:

<u>PARTIES, JURISDICTION AND VENUE</u>

1. This action arises under, and jurisdiction is conferred on this Court by virtue of, Section 301 of the Labor-Management Relations Act of 1947 (29 USCA §185), referred to here as the LMRA. Moreover, this action is also brought pursuant to the United States Arbitration Act, 9 U.S.C. sec. 1 et seq., 9 U.S.C. sec. 9.

2. Plaintiff UAW Local 578 is the exclusive bargaining representative for all production and maintenance employees of Defendant Oshkosh Corporation located in Winnebago County, Wisconsin, excepting office employees, supervisors, coordinators, and plant managers as described in the Recognition clause of the current collective bargaining agreement, Article I,

Section 1 (pg. 3) attached as **Exhibit 1**, and as such, is a labor organization representing employees in an industry affecting commerce, within the provisions of Section 301 of the LMRA (29 USCA § 185), and of the definitions contained in Sections 2(5), and 501(1) and (3) of the LMRA (29 USCA §§ 152(5), 142(1) and (3)).

3. Defendant Oshkosh Corporation ("Defendant" or "the Company") is a Wisconsin manufacturer with its principal place of business in Oshkosh, Wisconsin. Defendant is engaged in the sale of military vehicles and is therefore engaged in interstate commerce, and is an employer in an industry affecting commerce, within the provisions of Section 301 of the LMRA (29 USCA § 185), and of the definitions contained in Section 2(2), and 501(1) and (3) of the LMRA (29 USCA §§ 152(2), 142(1) and (3)).

4. Venue is proper in the Easter District of Wisconsin under 28 U.S.C. §1391(b).

CLAIM FOR ENFORCEMENT

5. On October 1, 2016, the parties entered into a Collective Bargaining Agreement, which agreement is now, and at all times mentioned was, in full force and effect. A copy of the agreement, marked **Exhibit 1**, is attached and made a part of this complaint. As appears from the exhibit, Article 5-GRIEVANCE PROCEDURE (pgs. 5-8), provides a procedure for the presentation, adjustment, and settlement of grievances, with decision of an arbitrator to be final and binding on the parties.

6. For at least 45 years the Defendant employer has provided the negotiated benefit of A&S (Accident and Sickness) benefits to its bargaining unit employees.

7. Article 18, Section 6 of the Collective Bargaining Agreement contains the language providing the negotiated A&S benefit. (Exhibit 1, pg. 37-38)

8. For all years prior to June 1, 2017, the Defendant administered the self-funded A&S benefits provided for under the collective bargaining agreement.

9. Prior to June 1, 2017 there was not an appeal process to be exhausted if an A&S claim was denied.

10. On or about June 1, 2017 the Company transferred administration of the negotiated A&S benefit to Cigna Insurance.

11. Despite the change in administrator to Cigna, the A&S benefits remained self-funded by the Defendant.

12. After Cigna took over the A&S benefit administration, the Union became burdened with many more complaints about claims being delayed or denied.

13. After Cigna took over, the Union became aware of and tried to help many employees that were denied A&S and spent months appealing their claims through Cigna.

14. The review of A&S claims under Cigna became much stricter and more onerous that it had been before Cigna and this resulted in undue delays and denials.

15. The Union initiated a grievance alleging that the Company was not administering and paying the A&S benefits in the same manner as it had before Cigna took over the administration and was thus depriving the membership of its negotiated benefit.

16. The Union sought as a remedy to have the Company stop violating Article 18 Section 6 and the employees and specifically asked to make anyone affected whole for any losses.

17. The grievance properly proceeded through all the Grievance steps, but the Parties did not resolve it.

18. The matter proceeded to an Arbitration hearing before Arbitrator Andrew M. Roberts on July 19, 2019.

19. At the Arbitration hearing the Company had only one witness, Kristin Manney, testify how A&S benefits were administered prior to Cigna.

20. The arbitration hearing was transcribed. A true and correct copy of the entire testimony of Kristin Manney with pertinent referenced exhibits from the Arbitration hearing attached hereto as **Exhibit 2**.

21. Prior to Cigna taking over the A&S benefit administration the medical information required to be provided to support an A&S claim was an Accident and Sickness Wage Continuation Claim Form that the healthcare provider would need to complete and return. (Exhib. 2, pg. 113, l.23- pg.114, l. 2: Arb. Exhib. 6)

22. The purpose of the Claim Form was to make sure that they had clarification and confirmation from the healthcare provider that there was a condition that resulted in a period of incapacity and what the period of incapacity was. (Exhib. 2, pg. 114, l. 4-10)

23. If the form was incomplete, the in-house Administrator would then send a letter template asking for clarification in order to understand. (Exhib. 2, pg. 115, l. 2-8; 122, l. 18-pg. 123, l. 8; Arb. Exhib. 7)

24. To determine if the [health] condition met the requirements for incapacity, the Administrator would see if the period of incapacity was reasonable. If so, she would accept that. If it did not make sense, then she would send a clarification form asking the provider to give more detailed information on how the condition was presenting itself that truly prevented the employee from being able to perform their job. (Exhib. 2, pg. 118, l. 6-pg. 119, l. 3)

25. The definition that was used for "incapacity" was similar to that used for the Family and Medical Leave Act ("FMLA"). (Exhib. 2, pg. 130, l.25-pg. 131, l. 6)

26. The in-house administrator would have them fill out a medical authorization release form; however, it was **not** a part of her process. She **never** obtained the employee's medical records with the release and waiver. (*emphasis added*) (Exhib.2, pg. 135, l. 18-24; pg. 136, l. 13-18)

27. On November 18, 2019 Arbitrator Roberts issued a Decision and Award. A true and correct copy of said Decision and Award is attached hereto as **Exhibit 3**. Arbitrator Roberts retained jurisdiction.

28. The Arbitrator awarded the following remedy:

    The Company shall return to the previous practice, i.e. the approach used to review and administer A&S claims prior to the change to Cigna. As part of the remedy the Company and the Union shall review how attendance points have adversely accumulated against employees claiming benefits that would not have been accumulating prior to the change and remove such points from the employees' records.

29. Despite the Arbitration Decision, the Company did not comply with the Ordered remedy.

30. After the Arbitration Decision, employees were, and are still, being subjected to scrutiny of their A&S claims more onerous than they had prior to Cigna.

31. Despite the Arbitration Decision, the Company continues to allow Cigna to use a medical release to obtain medical records for scrutinizing.

32. Despite the Arbitration Decision, some employees that were denied A&S because of the heightened scrutiny were, and are still, being required to go through the internal appeal process through Cigna with the emphasis being on submitting additional medical records that would not have been required by the Defendant prior to Cigna administrating the A&S benefit.

33. Despite the Arbitration Decision, the Company refuses to restore attendance points and/or revoke discipline to any of the Employees that were ultimately denied A&S benefits by Cigna under their heightened scrutinization of claims.

34. Despite the Arbitration Decision, the Company refuses to pay any of the Employees that were denied A&S benefits due to the heightened scrutinization.

35. Despite the Arbitration Decision employees were told by Cigna that their claims would be delayed or denied if they refused to sign a medical authorization. If they do sign the medical

authorization, Cigna then proceeds to obtain medical records rather than posing clarifying questions as they did pre-Cigna.

36. On January 12, 2020 the Union wrote to Arbitrator Roberts because there had been little progress in reaching resolution with the Company, a copy is attached hereto as **Exhibit 4**.

37. On February 3, 2020 the Union sought additional clarification from the Arbitrator as to 1) whether employees denied A&S due to the fact that the Company was allowing Cigna to scrutinize their claims beyond what would have been done pre-Cigna were entitled to be paid their A&S benefits; and 2) the Company's failure to comply with the Arbitration Decision a copy is attached hereto as **Exhibit 5**.

38. On February 12, 2020 Arbitrator Roberts issued a Supplemental Arbitration Award. It is attached hereto as **Exhibit 6**. He also relinquished jurisdiction at that time.

39. The problems identified in Paragraphs 27-35 have continued to date.

40. The Company has unreasonably delayed and failed to comply with the Arbitration Decision by refusing to direct Cigna to review and administer A&S claims as they were prior to the change to Cigna.

41. The Company's unjustified delays and refusals to return to the same manner of administration of A&S that existed prior to Cigna are in oppressive, wanton, and devoid of merit as to warrant a finding of bad faith.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Enter a judgment declaring that the Defendant is obligated to abide by the decision and award of the Arbitrator, dated November 18, 2019;

2. Order Defendant to revert back to the Wage Continuation Claim Form that was previously used (with appropriate address/title changes) before retaining Cigna.

3. Order Defendant to cease using a medical release to obtain employees' medical records and to revert back to sending doctors written clarification questions using the templates used pre-Cigna if the initiating form is either incomplete or unclear.

4. Order Defendant to stop requiring employees to go through Cigna's internal appeal procedure and advise Cigna of the following:

    1) That any appeals claims currently being appealed must be stopped and reviewed based on the initiating paperwork only and with any clarifications that might be required, as was done under the old process;

    2) That any appeals that were previously denied by Cigna must be examined based on the standards in place prior to Cigna administering A&S.

5. Order Defendant to expunge any attendance points and/or disciplinary records that were assessed to employees that were denied A&S benefits because Cigna improperly utilized a more onerous scrutinization from the Defendant's prior method of assessing A&S claims, and if applicable, make them whole for any losses resulting from disciplinary actions taken;

6. Order Defendant to pay employees that were improperly denied A&S benefits because Cigna improperly utilized a more onerous scrutinization from the Defendant's prior method of assessing A&S claims.

7. Award Plaintiff its attorney's fees;

8. Award Plaintiff its costs incurred in this action; and

9. Grant Plaintiff such other and further relief as the Court deems just and proper.

Dated this 24th day of April, 2020.

By: /s Sandra G. Radtke
    State Bar # 01022127
    Attorney for Plaintiff UAW
    Radtke Law Office, LLC
    15850 W. Bluemound Rd., #200
    Brookfield, WI 53005

Telephone: (262) 330-8120
E-mail: radtkelaw@tds.net