UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED AUTO WORKERS LOCAL 578,

        Plaintiff,

      v.                                 Case No. 20-C-666

OSHKOSH CORPORATION,

        Defendant.

## DECISION AND ORDER ENFORCING ARBITRATION AWARD

This action arises from a labor dispute between Plaintiff United Auto Workers Local 578 (UAW or the Union) and Defendant Oshkosh Corporation (Oshkosh or the Company) related to the administration of accident and sickness (A&S) benefits under Article 18, Section 6 of their collective bargaining agreement (CBA). The Union filed a grievance claiming that Oshkosh violated the CBA when it transferred administration of A&S benefits to Cigna. Although Oshkosh had reserved under the CBA the right to use a third-party administrator, the Union claimed, and an arbitrator found, that Cigna's administration of A&S benefits differed significantly from the way the program had been previously administered and therefore violated the CBA. Arbitrator Andrew M. Roberts thereupon ordered Oshkosh to "return to the past practices of how A&S claims were reviewed and administered prior to the change to Cigna." Dkt. No. 1-3 at 29. The Arbitrator also ordered that "the Company and Union shall review how attendance points have adversely accumulated against employees claiming benefits that would not have been accumulating prior to the change and remove such points from the employee's records." *Id.*

On April 27, 2020, after unsuccessfully seeking clarification from the Arbitrator, the Union brought this action for confirmation and enforcement of the arbitration award pursuant to the Labor-Management Relations Act, 29 U.S.C. § 185, and the United States Arbitration Act, 9 U.S.C. § 1 *et seq*. The Union claims that Oshkosh has failed to implement the Arbitrator's Award. Oshkosh, for its part, contends that it has implemented the Arbitrator's Award and that UAW's action constitutes an improper effort to obtain relief the Arbitrator did not award. For the following reasons, the Court concludes that Oshkosh has failed to fully comply and orders enforcement as set forth herein.

## BACKGROUND

UAW is the bargaining representative for all Oshkosh production and maintenance employees. Article 5 of the CBA sets out the procedure for resolving a grievance, which is defined as "a complaint by the Union or any employee(s) that an express provision of the Agreement or Memorandum of Agreement has been violated by the Company." Dkt. No. 1-1 at 5. If the parties are unable to resolve the grievance internally, the Union may elect arbitration. The CBA grants the arbitrator the authority to interpret and apply the agreement to the extent necessary to adjudicate the grievance. However, the arbitrator does not have the authority "to add to, deduct from, or alter the provisions of [the] Agreement." *Id.* at 7. "The decision of the arbitrator, if within the scope of his/her authority, shall be final and binding on the parties, except that the arbitrator's decision on the matters of arbitrability shall not be entitled to deference in any suit to enforce, vacate, modify or set aside the award and the reviewing court shall examine such issues de novo." *Id.*

For over forty years, Oshkosh has provided A&S benefits (also referred to as short term disability (STD) benefits) to UAW members under a collective bargaining agreement. Under the

2

terms of the current CBA, the Company agreed to pay a "weekly accident and sickness benefit commencing on the first day of an injury or hospitalization or the eighth day of illness." *Id.* at 37. The A&S benefit is payable for not more than twenty-six (26) weeks at a rate of fifty-five percent of "base per week per formula." *Id.* Prior to June 1, 2017, Oshkosh administered A&S benefits internally. Beginning on June 1, 2017, Oshkosh contracted with Cigna to administer A&S benefits.

On August 17, 2018, the Union filed a grievance charging the Company with violating Article 18, Section 6 of the CBA by failing to pay A&S benefits to hourly employees or properly administer the program. Dkt. No. 33-2 at 1. As an example of the violation alleged, the Union described in its grievance the experience of an employee who was off work several weeks with a lung infection but never received A&S pay even though the employee's doctor certified that the employee was unable to work and the leave was approved under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. By way of relief, the Union requested that the Company stop violating Article 18 and make affected employees whole plus interest. *Id.* Oshkosh denied that it had violated the CBA and denied the grievance. The Union thereafter requested arbitration.

A hearing was held before Arbitrator Roberts on July 19, 2019. In its opening statement, Oshkosh argued that the A&S benefit was governed by ERISA. It argued that, for this reason, employees whose claims for A&S benefits were denied were required to pursue the administrative remedies Cigna provided and seek judicial review in federal court. Because of ERISA preemption, Oshkosh claimed that the Arbitrator lacked the authority to order payment of A&S benefits and any remedy the Arbitrator could offer would be limited. Dkt. No. 33-1 at 3.

In the course of the hearing, the Arbitrator heard from Kristin Manney, one of the Oshkosh employees who administered the A&S benefits before Cigna took over. Ms. Manney testified that

3

the standard the Company used to determine eligibility for A&S benefits before Cigna took over was the same standard that was used to determine an employee's eligibility for leave under the FMLA. Manney testified that she administered both the A&S program and the FMLA program. Dkt. No. 1-2 at 2. Under the FMLA, an employee is entitled to take up to twelve weeks of leave during any twelve-month period if the employee is unable to perform the functions of his or her position because of a serious health condition. 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined in part as "an illness, . . . impairment, or . . . mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). Manney testified that she used the same definition in deciding whether employees were entitled to A&S benefits and simply checked to ensure they met the seven-day requirement for non-hospitalized illnesses. Dkt. Nos. 1-2 at 7; 1-3 at 10. In other words, if the employee had a serious health condition that rendered the employee unable to perform the functions of the employee's position, the employee would be entitled to A&S benefits immediately if the inability was due to accident or hospitalization and on the eighth day if it was due to illness. Dkt. No. 1-2 at 8.

Manney also testified that the documentation an employee was required to provide for A&S benefits and for FMLA leave consisted of certifications by the employee's doctor that the employee was unable to work. *Id.* Under the FMLA, an employee's request for leave does not operate as a general waiver of the employee's physician-patient privilege. "If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider." 29 C.F.R. § 825.307. The FMLA also "circumscribes the employer's right to challenge a physician's certification that leave is FMLA-qualifying." *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 313 (7th Cir. 1998) (citing 29 U.S.C. § 2613); *see also Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 837 (7th Cir.

4

2014). The employer may require that the employee obtain a second opinion, at the employer's expense, regarding information provided in the certification. 29 U.S.C. § 2613(c). If the second opinion differs from the opinion in the certification provided by the employee, the employer may require that the employee obtain a third opinion, also at the employer's expense. *Id.* § 2613(d)(1). The Act provides: "The opinion of the third health care provider concerning the information certified under subsection (b) shall be considered to be final and shall be binding on the employer and the employee." *Id.* § 2613(d)(2); *see generally Schermitzler v. Ashwaubenon*, No. 20-C-236, 2021 WL 2915029, at *5–6 (E.D. Wis. July 12, 2021). Thus, when she administered the program, Manney explained, although the employee was required to sign a medical release, it was not "part of our process" to "go and get their entire file and dig through it to look for stuff." Dkt. No. 1-2 at 8.

The Union offered evidence that the changes in the program once Cigna became the administrator were significant. Brian Hulbert, a thirty-four-year employee of the Company who had been a Union steward numerous times and was elected Vice-President of the Union in 2017, testified that, since Cigna took over, the number of employees with complaints concerning difficulties obtaining A&S benefits had continually increased to the point where he was spending 20 to 30 hours per week addressing them. The problems he dealt with included claim denials, burdensome requests for more information, points accumulated under the attendance policy, and delays in approval and payment of benefits. Dkt. Nos. 1-3 at 6; 33-1 at 3. Hulbert testified about one employee who was denied A&S benefits for treatment of kidney stones because he refused to complete a Cigna form requiring him to provide information about HIV and AIDS, use of drugs or alcohol, and his mental and physical history. Dkt. No. 33-1 at 4. The employee refused to complete the form because he thought the request for information was too intrusive. Hulbert

5

testified that, before Cigna began administering the program, employees just needed a note from their doctor. *Id.*

Another employee sought A&S benefits during periods when she was absent from work due to ulcerative colitis. She sought A&S benefits from May 28, 2018, through July 24, 2018. Though she had been on approved leave, her benefits were stopped after May 25, 2018, without explanation. She signed a medical release and sent Cigna all her related medical records. She received a denial letter from Cigna dated October 25, 2018, referencing a note releasing her to full duty as of May 14, 2018, signed by Dr. Wagner as part the basis for the denial. The employee testified that she had seen Dr. Wagner only one time, and he was not her doctor for the ulcerative condition. Though her initial appeal was unsuccessful, A&S benefits were eventually approved and paid but not until March 2019. Dkt. No. 1-3 at 7.

The Union also complained about the effect of the change on the attendance points employees were assessed. Under the Company's attendance policy, employees were given points for absences that were not exempt. Among the exemptions were qualifying family or medical leave and employees receiving A&S benefits. Employees were given one point for each non-exempt absence. Accumulating seven points resulted in a written warning, eight points resulted in a final written warning, and nine points resulted in termination. Points accumulated on a rolling 12-month period but were removed after a year. Dkt. No. 1-1 at 72. The Union claimed that delays in approving A&S benefits resulted in employees accumulating attendance points they would not have received prior to Cigna taking over administration of the program.

In an effort to counter the Union's claim that it had violated the CBA, Oshkosh also offered evidence that the change to Cigna was intended to streamline the application process for A&S benefits and bring it into line with the long-term disability benefit program, which Cigna also

6

administered. Even before the change, Oshkosh pointed out, employees were asked for medical releases upon applying for A&S benefits. Oshkosh also argued that, though the change in administrators may have delayed approval in some cases, the percentage of claims that were denied for insufficient documentation was roughly 3%. Because the Union offered no evidence that the approval rate was significantly greater before the change to Cigna, Oshkosh argued that no violation could be shown.

Upon consideration of the parties' post-hearing briefs, the Arbitrator issued an Award in which he found that "the Company did not comply with the collective bargaining agreement with regard to the A&S policy found in Article 18, Section 6, when it switched to Cigna, which resulted in a change in how A&S claims are now being reviewed and administered." Dkt. No. 1-3 at 28. The Arbitrator noted Oshkosh's argument that ERISA limited the redress he could order for denial of A&S claims. He concluded, however, that the grievance before him was "not over specific claim denials, but rather a collective objection to how the A&S plan is being administered as a whole under Cigna's administration . . . ." *Id.* at 27. This was an issue he found could "be grieved and addressed through arbitration under the labor contract." *Id.*

Turning to the merits, the Arbitrator acknowledged that the Company had the right under the CBA to decide who would administer the A&S benefit program but noted that how a benefit program is administered can have a significant impact on how and when the benefit is paid. *Id.* The Arbitrator credited Hulbert's testimony that, after Cigna took over, a growing number of employees complained about claim denials, burdensome requests for information, points accumulated under the attendance policy, and delays in payments and benefits. The Arbitrator noted that, while Oshkosh required a medical release prior to Cigna taking over as administrator, the medical release form Oshkosh used "did not include a specific request for medical information

7

regarding HIV, Aids, drugs, alcohol, and mental health issues." *Id.* The Arbitrator also noted Manney's testimony that, when she was administering the program for Oshkosh, reviewing the employee's entire medical file "was not part of our process." *Id.* at 27–28. "That is a significant difference," the Arbitrator concluded, "in how the A&S program was administered before vs. after the change to Cigna." *Id.* at 28. Based on these findings, Arbitrator Roberts entered the following Award:

1) That the Company did not comply with the collective bargaining agreement with regards to the A&S policy found in Article 18, Section 6 when it switched to Cigna, which resulted in a change in how A&S claims are now being reviewed and administered.

2) That the Company shall return to the past practice of how A&S claims were reviewed and administered prior to the change to Cigna.

3) That the Company and Union shall review how attendance points have adversely accumulated against employees claiming benefits that would not have been accumulating prior to the change and remove such points from the employees' records.

4) That jurisdiction shall be retained for sixty days solely to address any disputes over remedy. The sixty days shall be marked by the date the undersigned receives notice of such a dispute.

*Id.* at 29.

After reviewing the Arbitrator's decision, the parties found themselves in disagreement over what the Award meant. The Union took the position that Cigna was to stop using the broad form of medical release and scrutinizing employee medical records before deciding A&S benefit claims. The Union also claimed that Oshkosh was required to go back and review any claims that were denied by Cigna based upon its more extensive review of the claimant's medical records, pay benefits to those employees whose claims were improperly denied under Cigna's more extensive medical record review, expunge attendance points that were improperly assessed, and reinstate any employees who were terminated because of improperly assessed points. Dkt. No. 25-4 at 1–5.

Oshkosh, on the other hand, agreed that employees would not need to sign the Cigna medical authorization form in order to receive benefits. If the employee refused to sign the authorization allowing Cigna to obtain the records, however, the employee would need to obtain from the medical provider the medical documentation needed to prove the claim. Oshkosh agreed that Cigna would no longer include in its medical authorization form questions concerning HIV, AIDS, drugs, alcohol, and mental health issues. As to attendance points, the Company agreed that it would remove any attendance points assessed against employees whose claims for A&S benefits were ultimately approved. Finally, to address the Arbitrator's finding that Cigna was taking too much time to approve claims, Oshkosh agreed that, for any claims not decided within twenty days, it would follow up with Cigna and the employee to determine the reason for the delay. After completing its review, Oshkosh would either conditionally pay up to ten days of the A&S benefit or advise the employee concerning the basis for the delay and any additional information Cigna needed to make a determination. As to the Union's remaining contentions, Oshkosh denied that it was required to remove attendance points for employees whose claims were denied or pay any benefits on claims that had previously been denied by Cigna, noting that the remedy for improper denial of payment was governed by ERISA. *Id.*

Unsatisfied with the Company's proposal, the Union sought clarification of the Award from the Arbitrator in February 2020. Dkt. No. 1-5. In particular, the Union sought clarification concerning the remedy for employees whose claims for A&S benefits were denied under Cigna's more stringent review. The Union read the Arbitrator's Award as requiring the removal of attendance points from such employees' records and asked the Arbitrator to clarify that benefits should be paid for days they were improperly denied, as well. The Union argued that acceptance of the Company's position that the employees would have to appeal the denial to Cigna and, if

9

unsuccessful, seek relief in federal court would "be extremely expensive and time-consuming and would add to the already very delayed payments on a collectively bargained benefit that they should have already received had the Company not authorized Cigna to engage in its over-scrutinization." *Id.*

On February 12, 2020, the Arbitrator issued a brief decision which stated that the Award language was "clear and unambiguous" and that the Union's legal avenue, if necessary, is to go to court to enforce the Award. Dkt. No. 1-6 at 4. The Arbitrator then issued the following Supplemental Award:

> 1) **That the Company shall return to the previous practice, i.e., the approach used to review and administer A&S claims prior to the change to Cigna.** As part of the remedy the Company and the Union shall review how attendance points have adversely accumulated against employees claiming benefits that would not have been accumulating prior to the change and remove such points from the employees' records.
>
> 2) That jurisdiction is hereby relinquished.

*Id.* (emphasis in original).

Oshkosh responded to the Arbitrator's Award and Supplemental Award by developing a new procedure regarding the administration of A&S claims that it contends makes the process easier for employees. The Union asserts that, under the new procedure, Oshkosh is not fully complying with the Arbitration Award and filed this action seeking enforcement of the Arbitration Award. It requests that this Court (1) declare that Oshkosh is obligated to abide by the Arbitrator's November 18, 2019 decision; (2) order Oshkosh to revert back to the Wage Continuation Claim Form that was previously used before retaining Cigna; (3) order Oshkosh to stop using a medical release to obtain employees' medical records and to revert back to sending doctors written clarification questions; (4) order Oshkosh to stop requiring employees to use Cigna's internal appeal procedure; (5) order Oshkosh to expunge any attendance points and/or disciplinary records

that were assessed to employees who were denied A&S benefits; (6) order Oshkosh to pay employees that were improperly denied A&S benefits; and (7) award UAW attorney's fees and costs. Dkt. No. 1 at 6–7.

## ANALYSIS

A district court's review of an arbitration award rendered pursuant to a collective bargaining agreement is "extremely limited." *United States Soccer Fed'n, Inc. v. United States Team Players Ass'n*, 838 F.3d 826, 831 (7th Cir. 2016). This is due to the "federal policy of settling labor disputes by arbitration," which "would be undermined if courts had the final say on the merits of awards." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers v. Misco*, 484 U.S. 29, 37–38 (1987). Here, neither party challenges the Arbitrator's Award; they disagree over what it means. The Court therefore confirms the Award and proceeds to the question of whether Oshkosh has fully complied with it.

A court's obligation is to enforce a lawful arbitration award as it is written. The general rule is that a district court may not interpret an ambiguous arbitration award. "The court may not interject itself into the arbitration process by elaborating on or rewriting an arbitrator's award." *United Steelworkers of America, AFL-CIO-CLC v. Danly Mach. Corp.*, 852 F.2d 1024, 1027 (7th Cir. 1988). "If an award is unclear, it must be sent back to the arbitrator for clarification." *Id.* However, remand for clarification is a disfavored procedure because it delays execution of final judgment. *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992). Remand would seem especially inappropriate where, as here, in response to a request for clarification, the

11

Arbitrator has stated his Award "is clear and unambiguous." Dkt. No. 1-6 at 4. Regardless, a district court is permitted to interpret and enforce an ambiguous award if the ambiguity can be resolved from the record. *Flender Corp.*, 953 F.2d at 280.

### A. Failure to Return to Previous Practices

The Union asserts that Oshkosh has not complied with the Arbitration Award because Oshkosh has not returned to its prior practices for administering the A&S benefits. In particular, the Union claims that Cigna continues to obtain employee medical records that were not reviewed under the prior process, continues to apply heightened scrutiny, continues to use a clarification process to scrutinize claims in ways that were not done under the prior practice, and continues to delay payment to employees. The Union contends that, to fully comply with the Arbitration Award, Oshkosh must completely return to the procedure used prior to Cigna's involvement and decide A&S claims, like FMLA claims, based on the certification of the employee's doctor. Oshkosh asserts that the changes it made to its procedure after the Arbitration Award are consistent with past practices and represent a return to past practices.

Oshkosh revised and implemented a new claim initiation form that it asserts "streamlines and expedites the claim review and determination process." Dkt. No. 31 at 25. It maintains that "[i]f appropriately completed, the initiation form eliminates the need for further medical documentation substantiating disability and any attendant delay in obtaining it." *Id.* Oshkosh further revised language on the form, removing the provision that "instructed employees to provide medical information and advised that failure to do so may delay Cigna's claim determination." *Id.* Furthermore, Oshkosh also revised the medical authorization form and "instructed Cigna to invite employees to sign the optional form *only if* the information provided in the employee's initiation

12

form does not independently substantiate an A&S claim, i.e., when clarification is needed." *Id*. at 26 (emphasis in original).

But the revisions and changes implemented by Oshkosh do not constitute a complete return to "the previous practice, i.e., the approach used to review and administer A&S claims prior to the change to Cigna." Dkt. No. 1-6 at 4. The elimination of requests for medical information concerning HIV, AIDS, drugs, alcohol, and mental illness is consistent with the Arbitrator's Award, but Cigna's continued request for and scrutiny of employee medical records to determine whether to accept the certification by the employee's treating physician is not.

In describing the previous practice to which he was ordering a return, the Arbitrator recounted the testimony of former in-house administrator, Kristin Manney, that Oshkosh did not review an employee's full medical file before deciding a claim. Dkt. No. 1-3 at 27–28. Manney testified that, when Oshkosh administered the A&S program, the determination whether to approve claims was based on a certification provided by the employee's doctor, similar to applications for FMLA leave. Dkt. No. 1-2 at 7–8 (referencing "Accident and Sickness Disability Wage Continuation Form," Company Ex. 6 at 11). If the doctor's certification was incomplete or unclear, the Company advised the employee that clarification was needed and sent out a form to be completed by the employee's health care provider. *Id.* (referencing Memo and attached form, Company Ex. 7 at 13–14). Although the A&S Disability Wage Continuation form included an authorization for the Company to obtain the employee's medical records, Manney testified, as the Arbitrator recounted, "at that time, that was not part of our process." *Id.* at 8; Dkt. No. 1-3 at 27–28. Instead, she testified, the Company was using the certification by the employee's health care provider and any clarification that was requested. *Id.*

13

Instead of returning to these past practices, Oshkosh has instead made various changes to its A&S forms but has continued practices that only went into effect once Cigna began administering the plan. The evidence submitted by the Union shows that, unlike the procedure used by Ms. Manney, Cigna is employing its staff to obtain office notes and other medical records from the employee's physician or other health care professional and then making its own determination as to whether benefits will be paid. In a January 17, 2020, letter denying A&S benefits to an employee, for example, Cigna listed the following information that it reviewed in determining his claim: October 30, 2019, medical request form; office visit notes from visits on October 14, October 23, and October 30, 2019, with Dr. Mercedes Ann De Las Alas; office visit notes dated December 17, 2019, from Cindy Maison, NP; and clarification questionnaire from Dr. De Las Alas. Dkt. No. 25-6 at 1–4. The four-page denial letter explains:

> While you may exhibit symptoms such as fatigue and muscle twitching, the medical records currently on file to not indicate a functional impairment. No abnormal exam findings were provided for review. Please understand we are in no way stating that your symptoms do not exist. We are stating the medical information submitted by your treating physician and reviewed by our staff does not suggest a level of functional impairment severe enough to preclude you from performing the requirements of your regular occupation.

*Id.* at 2. The Union has submitted similar letters sent to other employees in which Cigna denied claims for A&S or Short Term Disability benefits based on its review of employee medical records or the lack thereof, as opposed to the certifications by the employee's health care professional that the Company previously relied upon. *Id.* at 5–83. This evidence shows that, even after the Arbitrator's Award, Cigna has continued to conduct "deep dives" into a claimant's medical records and treatment history in order to make claim determinations. *See* Dkt. Nos. 24 at 8–9; 35 at 10–13. Rather than granting the A&S benefit if the period of incapacity was reasonable given the

14

claimed condition as described by former administrator Manney, Cigna continued to override doctor opinions in making its determinations. *See id.*

The Union has also submitted as evidence copies of "clarification" letters Cigna has sent to employees' health care professionals, which seek far more detailed information than Ms. Manney had requested under the previous procedure. Dkt. No. 25-6 at 84–116. While Oshkosh claims that Cigna's practice of sending follow-up letters for clarification is consistent with Oshkosh's past practice, that does not appear to be the case. Oshkosh's pre-Cigna administrator noted that she would only send them if the doctor's certification was unclear in that, for example, it failed to list the days in which the employee was completely incapacitated. *See* Dkt. No. 1-2 at 5, 14. As the Union has demonstrated, even after the Award, Cigna continued to go far beyond the previous basic clarifications to instead seek detailed explanation and justification for claims. *See, e.g.*, Dkt. No. 24 at 10 (clarification letter sent May 2020 "asking the doctor how the patient was assessed, to clarify restrictions placed on the patient, and inquiring what the treatment plan is, and when he will be able to return to work without any restrictions. It also wants copies of office notes and test result . . ."); *see also* Dkt. No. 35 at 10–14 (sample listing of Cigna post-award information requests).

So, while it is true that Oshkosh sent clarification letters while it was administering the A&S benefit in house, the Arbitrator found that the nature and frequency of clarification requests changed after Cigna took over. Unlike Cigna, Ms. Manney did not have a staff of "Nurse Case Managers" and "Group Claims Analysts" to request and review office visit notes, hospital records, and test results to assess whether the employee's doctor's certification would be accepted. Dkt. No. 25-6 at 87–90, 95–98, 101–03, 105–06, 108–09, 110, 114–16. The Arbitrator concluded that those changes did not comply with the agreement and ordered Oshkosh to return to pre-Cigna

15

practice. To the extent Cigna continues to request and require information from claimants and their medical providers beyond basic clarifications, it is not complying with the Award. The fact that Oshkosh has modified its forms is not sufficient to show compliance with the Award. Oshkosh was ordered to return to pre-Cigna review practices. That means that it must direct its A&S administrator, be it Cigna or another entity, to decide claims for A&S benefits as it does for FMLA leave requests: on the basis of the completed certification provided by the employee's doctor, subject to requests for clarification or authentication.

### B. Review of Attendance Points

The Arbitrator apparently thought that the delays in approving employee claims for A&S benefits that were caused by Cigna's more thorough review of medical records could result in the accumulation of attendance points even on claims that were ultimately approved. Although he acknowledged that the percentage of claims that were denied before Cigna took over was "fairly similar" to the number that were denied after, the Arbitrator stated that number "does not reflect the increased number of attendance points an employee may accumulate given the extended periods for final approval in many cases." Dkt. No. 1-3 at 28. The Arbitrator therefore ordered as part of the remedy for Oshkosh's violation of the CBA that "the Company and Union shall review how attendance points have adversely accumulated against employees claiming benefits that would not have been accumulating prior to the change and remove such points from the employees' records." *Id.* at 29. The Arbitrator repeated the same directions in his Supplemental Award. Dkt. No. 1-6 at 4.

Oshkosh asserts that it has complied with this direction by removing attendance points from records of employees with approved claims. The Union disagrees and argues that the Award also requires the removal of attendance points improperly given on claims that were denied. It

contends that the required review is not limited to claims that were approved. The Union also contends that Oshkosh is required to not only remove attendance points from the records of employees whose claims were denied but also reinstate any employees who were terminated as a result.

On this issue, the Union has the better argument, at least as to the attendance points. It makes no sense to remove attendance points only on claims that were approved, since no attendance points were given when the claim was ultimately approved. Moreover, the actual Award does not distinguish between attendance points improperly assessed on claims that were approved and those that were denied. It states: "The Company and Union shall review how attendance points have adversely accumulated against employees claiming benefits that would not have been accumulating prior to the change and remove such points from the employees' records." Dkt. Nos. 1-3 at 29; 1-6 at 4. It thus follows that the review ordered by the Arbitrator is not limited to employees whose claims of A&S benefits were denied.

At the same time, it seems unlikely that employees with legitimate leave requests would have been assessed attendance points simply because the A&S claims were delayed or denied. Employees who are on FMLA leave are also exempt from assessment of attendance points, regardless of whether they were receiving A&S benefits, Dkt. No. 1-1 at 72, and no claim was made that FMLA leave was being improperly denied. Some employees eligible for A&S benefits may not yet be eligible for FMLA leave, due to the length of their employment, but this would seem to affect only a small number of employees. Moreover, because attendance points are "accumulated on a consecutive / rolling 12-month period" and are removed after a year, *id.*, any attendance points improperly assessed prior to the Arbitrator's decision would by now have been

17

removed from the employees' records and have no effect, unless they resulted in termination. Regardless, that is the review that the Arbitrator ordered the parties to undertake.

### C. Payment of Improperly Denied A&S Claims and Employee Reinstatement

The Union also contends that the Arbitrator's Award requires Oshkosh to pay A&S benefits to employees whose claims were improperly denied after Cigna began administering the program and reinstate any employees who were terminated based on the accumulation of attendance points that were improperly assigned when their claims were denied. The Union concedes that the Arbitrator "did not directly comment one way or the other as to pay." Dkt. No. 24 at 16. It acknowledges that even after it sought clarification, "regrettably, the Arbitrator provided little further guidance and relinquished jurisdiction." *Id.* Nevertheless, the Union argues that employees whose A&S claims were improperly scrutinized and denied are entitled to an appropriate assessment of their claims as they would have been assessed before Cigna took over and it stands to reason that if these claims are now approved, the employees must not only have attendance points removed but also receive the A&S pay to which they were entitled. *Id.* This follows, the Union argues, because "the logical ramification of removing the points means that the claim [is] approved." *Id.* at 17.

Oshkosh argues that, not only did the Arbitrator not order payment of individual claims, but because the A&S program is governed by ERISA, he had no authority to do so. Oshkosh contends, as it did before the Arbitrator, that federal law preempts individual employee claims for benefits under a plan governed by ERISA. The Company cites 29 U.S.C. § 1144(a) and *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 44 (1987), as support for its contention. But § 1144(a) and *Pilot Life* state only that ERISA preempts state law claims. The Union's claim arises under § 301 of the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, a federal law.

18

Claims for benefits under ERISA plans have been found to be arbitrable. *See Karl Schmidt Unisia, Inc. v. Int'l Union, United Auto, Aerospace, & Agr. Implement Workers of Am, UAW Local 2357*, 628 F.3d 909 (7th Cir. 2010) (affirming district court order compelling arbitration of grievance over employee eligibility for supplemental retirement benefits under pension plan); *Challenger v. Local Union No. 1*, 619 F.2d 645, 647 (7th Cir. 1980) ("The arbitration provision of the pension plan, as a part of the collective bargaining agreement, should be interpreted to cover a dispute between a pension claimant and the trustees unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). Additionally, the Union contends that the Company waived its ERISA preemption argument by submitting the claims to arbitration and, in any event, its A&S benefit is not an ERISA-governed plan but falls within the "payroll practice" exemption set forth in 29 C.F.R. § 2510.3-1(b)(2).

The Court need not decide whether individual employee claims for A&S benefits are arbitrable because the plain fact is that the Arbitrator did not include in his Award any direction that Oshkosh pay employees benefits that had been previously denied. In response to the Company's argument that he had no authority to award A&S benefits because the specific remedies under ERISA were exclusive, the Arbitrator stated, "the grievance here is not over specific claim denials, but rather a collective objection to how the A&S plan is being administered as a whole under Cigna's administration, which I find can be grieved and addressed through arbitration under the labor contract." Dkt. No. 1-3 at 28. Consistent with this explanation, the Arbitrator made no mention of benefits being paid in his Award. *Id.* at 29. Even when asked by the Union to clarify his Award by explicitly ordering the Company to pay back-due benefits, the Arbitrator refused to do so and simply restated his original Award. Dkt. Nos. 1-5; 1-6. Notably, this contrasts with his order directing that improperly assessed attendance points be removed. If

19

the Arbitrator intended to in addition require payment of benefits that were improperly denied, he would have said so. Given this record, the Court has no authority to order Oshkosh to pay individual employees benefits on claims that were previously denied. To do so would be to usurp the authority of the Arbitrator.

The same is true of the Union's request for reinstatement. As an initial matter, it does not appear that any employees whose claims for A&S benefits were denied by Cigna were terminated for excessive absences. Dkt. No. 31 at 23–24. But even if they had, the Arbitrator's Award says nothing about reinstatement and the Union didn't even raise the issue of reinstatement of employees in its request for clarification. The Court has no authority to order relief that was not awarded by the Arbitrator.

### D. Attorney's Fees, Sanctions, and Appointment of Special Master

The Union also urges the Court to award it attorney's fees and to appoint a special master to oversee the enforcement of the Award. "Although § 301 does not expressly authorize the award of attorney's fees, a prevailing party is entitled to such fees if the opponent's suit has no merit or is frivolous, that is, brought in bad faith to harass rather than to win." *Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 959 F.2d 685, 689 (7th Cir. 1992) (internal quotations omitted). The Court is unable to conclude that Oshkosh acted in bad faith. Although the Court concludes that Oshkosh has failed to fully comply with the Arbitration Award, it has also rejected the Union's claim that Oshkosh was required by the Award to pay benefits on claims that Cigna previously denied. Moreover, mere non-compliance is not enough to infer bad faith, and the Union has not offered any concrete evidence to suggest that Oshkosh has acted in bad faith. While the Union may be displeased with Oshkosh's actions over the course of its attempts

to comply with the Arbitration Award, that displeasure, on its own, does not warrant the award of attorney's fees.

The Union also contends that sanctions are appropriate in view of the difficulties counsel had in obtaining discovery from Oshkosh to show that it was failing to comply with the Arbitrator's Award. The Union concedes that, ultimately, it obtained the information needed to prove its case and its motion could therefore be denied as moot but claims that the refusal of the Company to respond to its requests in a timely manner and without counsel's filing of a motion to compel warrant some sanction. *See* Fed. R. Civ. P. 37(a)(5). Oshkosh objected to many of the Union's discovery requests as calling for irrelevant information that would have been burdensome to gather. At the same time, the Company did provide responsive documents. Much of the discovery dispute flowed from the parties' sharp disagreement over what the Award required and the sheer number of requests the Union had posed.

Under these circumstances, sanctions are not appropriate. Based on the Court's interpretation of the Award, many of the Company's objections were justified. And even as to the issues where the Court ruled against the Company, i.e., what return to past practice means and review of attendance points improperly assigned to employees whose claim were denied, its position was not so unreasonable as to warrant the imposition of sanctions. The Court is bound by the Arbitrator's ruling that the Company was required to continue administering its A&S benefit program as it had been before appointing Cigna as administrator, even though the CBA explicitly allowed the Company to use a third-party administrator. And while the Company was using essentially the same standard to decide claims for A&S benefits as it used for granting requests for FMLA leave before Cigna began administering the program, nothing in the CBA or the law

required that it do so. Yet, that appears to be what the Arbitrator ruled, though in terms both parties found less than clear. Given this record, sanctions are not appropriate.

As for the Union's request that a special master be appointed to oversee enforcement of the Award, the Court concludes that such an appointment is unnecessary. Under Federal Rule of Civil Procedure 53, a court may appoint a special master to (a) perform duties consented to by the parties; (b) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury, but only if certain conditions are met; or (c) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district. But the appointment of a special master is "the exception and not the rule," and there must be a showing that "some exceptional condition" requires such an appointment. *Williams v. Lane*, 851 F.2d 867, 884 (7th Cir. 1988) (internal quotations and citations omitted). The Court sees no "exceptional condition" present here, such that the appointment of a special master would be required. Although the Union contends that a special master will result in speedier and impartial compliance, the Court believes that this order will be enough for Oshkosh to comply with the Arbitration Award. Of course, should Oshkosh fail to comply with this order, the Court may revisit the issue in the future.

## CONCLUSION

Based on the foregoing, this Court confirms the Arbitration Award dated November 18, 2019, and finds that Oshkosh has not fully complied with the Award.

**IT IS THEREFORE ORDERED** that Oshkosh is directed to *return* to its past practice and remedy its A&S claims review process as directed herein. More specifically, Oshkosh is to direct its A&S administrator, be it Cigna or another entity, to decide claims for A&S benefits on the basis of the completed certification provided by the employee's doctor, such as the attached

22

A&S Disability Wage Continuation Claim form marked in the Arbitration Hearing as Company Exhibit 6, subject to requests for clarification when the certification is incomplete.

**IT IS FURTHER ORDERED** that the parties are to jointly review A&S claims to determine if any were inappropriately denied by Cigna, as well as claims that were approved, and to restore attendance points to affected current employees.

**IT IS FURTHER ORDERED** that Oshkosh's motion for leave to file sur-reply (Dkt. No. 40) is **GRANTED**. The Clerk is directed to detach and file the sur-reply.

**IT IS FURTHER ORDERED** that UAW's motion to compel (Dkt. No. 18) is **DENIED** as moot.

This order disposes of all claims before the Court, and the Clerk is directed to enter an appropriate judgment.

Dated at Green Bay, Wisconsin this <u>29th</u> day of October, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge